Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7934 | **DATE** | 9/4/2001 |
| **CASE TITLE** | Metropolitan Life Ins Co., Inc. vs. Charles Hart et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We grant MetLife's motion (Doc 8-1) for summary judgment and deny Defendants' cross-motion (Doc 12-1) for summary judgment. Plaintiffs are entitled to recover from Defendants $25,782 in overpayment plus any applicable interest. We also deny each party's motion for attorneys' fees.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 0 5 2001 date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | SEP 0 5 2001 date mailed notice | |
| | | FILED FOR DOCKETING 01 SEP -4 PM 12:29 | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| METROPOLITAN LIFE INSURANCE COMPANY, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | DOCKETED SEP 05 2001 00 C 7934 |
|---|---|---|
| Plaintiff, | | |
| vs. | | |
| CHARLES HART, BARBARA GOESKE and CHRISTINA MAHANY, | | |
| Defendants. | | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

Before the Court are the Cross-Motions for Summary Judgment of Plaintiff Metropolitan Life Insurance Company ("MetLife") and Defendants Charles Hart, Barbara Goeske and Christina Mahany. For the following reasons, we grant MetLife's motion and deny Defendants' motion.

### BACKGROUND

The facts in this case are largely undisputed. Ms. Bridie Hart worked for the United States Court of Appeals for the Seventh Circuit. As a federal employee, she was eligible for life insurance coverage under the Federal Employees' Group Life Insurance Act ("FEGLIA"). FEGLIA furnishes federal employees with three choices



regarding the continuation of their life insurance coverage after retirement: 75% Reduction, 50% Reduction, or No Reduction. Under the 75% Reduction election, after an employee reaches the age of 65 and retires, the amount of basic life insurance coverage reduces at the rate of 2% per month until it reaches 25% of the basic life insurance amount at the time of retirement. § 8706(b)(3)(A). Under the 50% Reduction election, the amount of coverage reduces at the rate of 1% per month until it reaches 50% of the basic life insurance amount at the time of retirement. § 8706(b)(3)(B). Under the No Reduction election, no reduction occurs in the amount of basic life insurance coverage. See id. Premiums vary according to the level of coverage selected.

About six weeks prior to her retirement, Ms. Hart elected "No Reduction" in her life insurance policy. On December 31, 1989, she retired from her position. Over the next several months, the monthly premiums became financially burdensome on Ms. Hart. After several letters and telephone calls from Hart, the Office of Personnel Management reduced Ms. Hart's FEGLIA coverage. As of May 25, 1990, premiums were no longer deducted pursuant to the "No Reduction" election.

Ms. Hart passed away on October 13, 1996. The following January, OFEGLI paid life insurance benefits to Defendants, who were Hart's designated beneficiaries totaling $36,864.30. Defendant Mahany received $12,304.65, Defendant Hart

$12,304.65 and Defendant Goeske $12,255.00. OPM later discovered through an audit that Defendants had been paid pursuant to the "No Reduction" option originally elected by Hart. Her subsequent change to 75% Reduction was not reflected on the original certification of insurance used to calculate the amount of insurance proceeds paid by MetLife on behalf of OFEGLI. According to the audit, Defendants should only have received life insurance benefits totaling $11,082.07 based upon the 75% Reduction Hart subsequently elected. The overpayment calculates to $25,500 plus interest of $282.23 for a total of $25,782.23.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this

burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record--only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

## DISCUSSION

The dispute between the parties turns upon our interpretation of the relevant provisions of FEGLIA. Ultimately our resolution will turn on whether the reduction in value of a life insurance policy is considered a "cost" under the terms of the statute. Plaintiff urges us to conclude that the monthly 2% reduction in the value of a retired employee's life insurance plan, where the retiree is paying no monthly premiums, amounts to a "cost" that violates section 8707(b)(2). This conclusion defies common sense, a plain reading of the statute and the legislative history. Common sense dictates

that no insurance provider, federal or otherwise, would offer basic life insurance coverage to retirees while requiring neither premium payments nor a reduction in the policy's value on a monthly basis. Furthermore, our plain reading of the statute reveals a clear distinction between costs and reductions. Moreover, even if we found the relevant statutory language ambiguous and turned to the legislative history for guidance, that too mandates the same result.

*1. Plain Language of the Statute*

Where a federal employee carrying a life insurance policy under FEGLIA retires on or before December 31, 1989, as Ms. Hart did, FEGLIA provides that

> [n]otwithstanding paragraph (1) of this subsection, insurance shall be so continued without cost (other than as provided under section 8706(b)(3)(B)) to each employee who so retires, or commences receiving compensation, on or before December 31, 1989.

§ 8707(b)(2). In order to qualify for this savings clause, an employee must have retired by December 31, 1989, and must hold a life insurance policy other than what is described by section 8706(b)(3)(B). See id. Section 8706(b)(3)(B) defines the "no reduction" and "50% reduction" options:

> in addition to any deductions which would be required if the insurance were continued as provided under subparagraph (A) of this paragraph, the employee may elect continuous withholdings from annuity or compensation in amounts determined by the Office, and the employee's life insurance coverage shall be either continued without reduction or reduced each month by no more than 1 percent of its face value until no

less than 50 percent of the amount of insurance in force before the first reduction remains.

§ 8706(b)(3)(B). Thus, according to the plain language of the statute, an employee who retired on or before December 31, 1989 can continue to hold <u>without cost</u> a life insurance policy <u>other than</u> the "no reduction" or "50% reduction" plan. The only other available type of basic life insurance policy is the "75% reduction" plan. Accordingly, pre-December 31 retirees can continue to hold without cost a life insurance policy based on the 75% reduction plan. Correspondingly, pre-December 31 retirees who hold policies based on the "no reduction" or "50% reduction" plans do not enjoy the "without cost" modifier, implying that they must pay additional costs to enjoy the additional benefits contained in their policies. This interpretation accords with the plain meaning of the statute as well as the legislative history.

Where, as in Ms. Hart's case, an employee initially elects the "no reduction" option and then later changes her mind, she may cancel that election and her life insurance coverage will continue "as if [she] had originally elected coverage under subparagraph (A) of paragraph (3) of this subsection [the "75% reduction"]." § 8706(b)(4). As the savings clause provides, those who originally elected coverage under the 75% reduction carry the insurance without cost. § 8706(b)(2).

Defendants argue that the monthly percentage reduction of the value of the life insurance policy amounts to a "cost" levied in violation of section 8707(b)(2). The

- 6 -

plain language of the statute does not support this argument. The position of the "without cost" language is important. It appears in subsection (b)(2) of section 8707, which modifies subsection (b)(1). Subsection (b)(1) describes the deductions that may properly be withheld from employees' compensation or annuities to pay for life insurance. Subsection (b)(2) then modifies that statement, providing that "notwithstanding" those allowable deductions insurance shall be continued "without cost" to employees who retired on or before December 31, 1989. Juxtaposed as it is against the deductions permitted by subsection (b)(1), the "without cost" language refers specifically to the absence of deductions – not generally to any lack of reduction of the face value of the policy as Defendants maintain.

Defendants also contend that divorcing costs from reduction renders the savings clause superfluous. It does not. Important distinctions remain that "save" those employees retiring on or before December 31, 1989, from the slightly harsher consequences of the statutory amendments to sections 8707(b)(1) and 8796(b)(3)(A) and (B). According to the plain language of the savings clause, employees who retire on or before December 31, 1989 pursuant to the 75% reduction option enjoy the continuation of insurance without cost. § 8707(b)(2). No mention is made of the age at which employees must retire in order to trigger this "without cost" provision, so the reasonable assumption is that it is triggered upon retirement. The same cannot be said

of those employees who retire subsequent to that date. Those post-December 31 retirees enjoy the absence of deductions only after they reach the age of 65. § 8707(b)(1). The difference carries significance, as a pre-December 31 retiree whose age is under 65 would not have to continue paying premiums upon retirement, but a post-December 31 retiree would until (s)he reached the age of 65. In that sense, section 8707(b)(2) "saves" the pre-December 31 retirees from an additional cost imposed on the post-December 31 retirees. This distinction defeats Defendants' contention that the savings clause is superfluous.

Even if we found the statutory language to be ambiguous, which we do not, the legislative history mandates the same result. As the House Report relates, with the passage of the Federal Employees' Group Life Insurance Act of 1954 ("FEGLIA") group life insurance became available for nearly all federal employees. See H.R. Rep. No. 96-1280, at *2 (1980), reprinted in 1980 U.S.C.C.A.N. 3867. At the time, FEGLIA represented a "model of progressive fringe benefit legislation" which was later emulated by many private sector employers. Id. Among the statute's most progressive features was its continuing insurance provision. See id. Under that provision, an employee who retired on an immediate annuity could continue his insurance without payment. See id. That is, the amount of the insurance began to

decline each month at the rate of 2% of the original face value of the policy until 25% of the original value remained. See id.

As the decades passed and FEGLIA remained unchanged, its progressiveness faded. See id. Enrollment dropped as employees, especially the younger ones, found more appealing and cost-effective alternatives in the private insurance industry. See id. at *3. The decline in the enrollment of younger employees proved especially nettlesome as their actuarial value could help keep costs down. See id. The more young employees declined enrollment due to the high expenses, the more those expenses rose. See id.

In 1980 the House Committee on Post Office and Civil Service set about rehabilitating FEGLIA. The Committee introduced a bill that identified two main problems with FEGLIA, one of which was the continuing insurance feature that had been so attractive decades ago. See id. at *3. The Committee identified the continuing insurance feature as the culprit behind the high cost of life insurance through FEGLIA. According to the Committee,

> The only reason for this high cost is that the insurance may be continued after retirement without cost to the employee and a minimum death benefit is payable to the retired employee's beneficiary. This guaranteed payment causes the cost of the federal insurance policy to be about twice the cost of ordinary term insurance. Although this costly feature makes the insurance attractive to older employees, younger employees, who are not considering retirement, frequently decline coverage and purchase term insurance in the private sector at a lower cost. The federal program

suffers because of the actuarial experience which younger employees would contribute to the overall system.

H.R. Rep. No. 96-1280, at *3. In light of this cost problem, the Committee recommended certain changes to the reduction in life insurance that occurs after retirement.

This legislative history makes clear that since the inception of FEGLIA a distinction has existed between reduction in policy value and costs imposed on retirees. The very first continuing coverage plan featured a minimum death benefit payable to the retired employee's beneficiary "without cost to the employee." Id. That minimum death benefit was guaranteed despite the monthly reduction in the face value of the policy following retirement. By characterizing that benefit as "without cost to the employee," despite the monthly reductions that could potentially whittle it down to 25% of its value at the time of retirement, Congress evinced its clear intent to distinguish reduction in value from cost to the employee.

*3. Application*

Applying this interpretation to the case at bar compels the conclusion that MetLife could properly have made post-retirement deductions from Hart's pension and reductions in the value of her life insurance policy. Accordingly, we grant their motion for summary judgment.

## CONCLUSION

For the foregoing reasons, we grant MetLife's motion for summary judgment and deny Defendants' cross-motion for summary judgment. Plaintiffs are entitled to recover from Defendants $25,782 in overpayment plus any applicable interest. We also deny each party's motion for attorney's fees.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: September 4, 2001